E. MARTIN ESTRADA
United States Attorney
MACK JENKINS
Assistant United States Attorney
Chief, Criminal Division
CLIFFORD D. MPARE (Cal. Bar No. 337818)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4962/0183
     Facsimile: (213) 894-0141
     E-mail:    clifford.mpare@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>JONATHAN LIPMAN,<br><br>             Defendant. | No. 2:23-CR-00491-FLA<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  March 26, 2024<br>Trial Time:  8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Fernando L.<br>             Aenlle-Rocha |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Clifford D. Mpare and Daniel H. Weiner, hereby submits its trial memorandum in the above-captioned case.

The government reserves the right to submit supplemental trial memoranda as appropriate before, or during, the trial.[1]

Dated: March 1, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK JENKINS
Assistant United States Attorney
Chief, Criminal Divisions

_____/s/_____
CLIFFORD D. MPARE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] The government sent its trial memorandum to defendant's standby counsel, Joel Koury, via email on February 29, 2024. The government anticipates meeting and conferring with defendant and Mr. Koury about the trial memorandum on Wednesday March 6, 2024. Accordingly, the government anticipates filing a trial memorandum that notes defendant's objections in advance of the March 8, 2024 pretrial conference.

**TRIAL MEMORANDUM**

**I.   STATUS OF THE CASE**

    **A.   Trial Schedule**

The jury trial against defendant Jonathan Lipman ("defendant") is set begin on March 26, 2024, at 8:30 a.m.

    **B.   Length of Trial**

The estimated time for the presentation of the government's case-in-chief is approximately two days.  At this time, the government is not aware of any potential defense witnesses.

    **C.   Pre-Trial Status of Defendant**

Defendant is detained pending trial.

    **D.   Jury Trial**

Jury trial has not been waived.

//

**E.   Witnesses**

At this time, the government expects to call in its case-in-chief the four fact witnesses listed below. The government will update its witness list, as necessary, in advance of trial. Based on the testimony of any witnesses called by the defendant, the government may call additional witnesses in any rebuttal case.

1. E.C. (Probation Officer, Ocean County Probation Office);
2. Sergeant Daniel Lokerson (Officer, Deal County Police Department);
3. Detective Duc Cao (Detective, Los Angeles Police Department);
4. Hon. K.R. (Judge, New Jersey Superior Court); and
5. Jacob Tomes (Special Agent, Federal Bureau of Investigation)

## II.   STATEMENT OF THE CHARGE AGAINST DEFENDANT

The defendant is charged in the Indictment with stalking in violation of Section 2261A(2)(A),(B), 2261(b)(5) of Title 18 of the United States Code. For the defendant to be found guilty of that charge with respect to the victim named in the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct;

Second, that the defendant, while engaged in the course of conduct, acted with the intent to harass or intimidate Victim K.R.; and

Third, that defendant's course of conduct placed Victim K.R. in reasonable fear of death or serious bodily injury; or caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to Victim K.R.

A "course of conduct" is a pattern of conduct composed of two or more acts, evidencing a continuity of purpose.  Not all acts that constitute part of a course of conduct must involve the use of the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce.

The terms "harass", "intimidate", and "substantial emotional distress" are given their common, ordinary meanings.

*Source*: 18 U.S.C. § 2261A(2); 18 U.S.C. § 2266(2) [Stalking]; Fifth Circuit Pattern Jury Instruction (Criminal Cases) No. 2.86B (2019 ed.) [Stalking]; United States v. Ackell, 907 F. 36 (1st Cir. 2018); United States v. Gonzalez, 905 F.3d 165 (3d Cir. 2018); United States v. Shrader, 675 F.3d 300 (4th Cir. 2012); United States v. Osinger, 753 F.3d 939 (9th Cir. 2014); United States v. Bell, 303 F.3d 1187 (9th Cir. 2002); United States v. Bowker, 372 F.3d 365 (6th Cir. 2004); United States v. Conlan, 786 F.3d 380 (5th Cir. 2015).

**III. STATEMENT OF FACTS**

The government expects that the evidence at trial will establish the following facts:

Defendant sent hundreds of disturbing and threatening emails to a New Jersey Superior Court Judge (i.e., Victim K.R.) to harass and intimidate K.R. after K.R. issued a judicial order concerning defendant.  Moreover, defendant, among other acts of stalking: (i)

3

tracked down K.R.'s address and called her neighbor in an attempt to harass, intimidate, and stoke fear in K.R.; (ii) left numerous voicemails at the New Jersey courthouse directed at K.R.; and (iii) continued his course of conduct despite warnings from law enforcement regarding his illegal conduct.

Specifically, the government will prove that, from February to September 2023, while within the Central District of California, and elsewhere, defendant, with intent to harass and intimidate K.R., used an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, namely, cellular telephone networks, email, interstate wires, and the Internet, to engage in a course of conduct that placed K.R. in reasonable fear of death and serious bodily injury, and that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to K.R.

Defendant's course of conduct included, among other things, the following:

    a. On or about February 1, 2023, defendant sent an email to K.R. which contained a photograph of what appeared to be a lever action shotgun and the following text: ";)".

    b. On or about February 1, 2023, defendant called E.C.[2] and told E.C. he had a message for E.C. and K.R., namely that "it's a shame there are kids that get shot up in schools instead of you people."

---

[2] E.C. is a a probation officer in the Ocean County Superior Court. E.C. was responsible for coordinating the court calendar for K.R. and received several messages and voicemails from defendant.

4

    c. On or about February 4, 2023, defendant sent at least six emails to K.R., including the following:

     i. an email stating, among other things, "you make the world a worse place. People will know your name."

     ii. an email stating, among other things, "Just because I say [K.R.] would make a better corpse than a person doesn't mean I'm going to make her a corpse."

     iii. an email titled "I'll make sure you get a copy of a script you are in," in which defendant wrote, "it's got a photo of your head on a mantle."

    d. On or about February 23, 2023, defendant called and left a voicemail regarding K.R. for E.O., who is K.R.'s neighbor, and to whom defendant had no prior known connection.

    e. On or about March 14, 2023, defendant sent at least two emails to K.R., including the following:

     i. an email stating, among other things, that "Cancer and coronavirus and emphysema exist to balance out bigots like you abusing your privilege."

     ii. an email stating, among other things, "Who the world will be much better off as a corpse than a person."

    f. On or about March 28, 2023, defendant sent at least three emails to K.R., including the following:

     i. an email titled "Your death," in which defendant wrote, "I pray every single day that you suffer a slow and painful death" and "I pray you have some issue with your lungs and your family watches you die slowly struggling to breath like many Jews in the holocaust."

5

    ii. an email titled "Seriously after the life [K.R.] has lead," in which defendant wrote, "She's deserves to spend a decade in geriatric struggle and misery as her family helplessly watches."

    iii. an email stating, among other things, "as you struggle to breath or what ever consequence of your selfish little life befalls your body and betrays your existence, you will remember me" and "Your concerns about where you are headed are warranted. Some call it hell."

  g. On or about July 23, 2023, defendant sent at least 11 emails to K.R., including the following:

    i. an email titled "Let us pray that [K.R.] dies as soon as possible," in which defendant wrote, "Let us pray that [K.R.] dies suffocating in her own body" and "Please god kill her violently.  but with cancer or a lower gi bleed.  something long and dragged out that robs her of her ability to speak for years."

    ii. an email titled "let us pray that [K.R.'s] family watches her die slowly in hospice," in which defendant wrote, "let her last moments wander to wondering if her family even wants to be there as she suffocates to death for her lifetime of sins."

    iii. an email titled "the world would be better off if [K.R.] died tomorrow," in which defendant wrote, "massive car accident. gunshot wound. beheading. stroke" and "'justice' is her suffering in a body she can't escape. emphysema sounds like justice."

    iv. an email titled "plenty of people realize as humans they make the world a worse place," in which defendant wrote,

"once again let us pray that [K.R.] dies the most painful natural death possible.  or decapitation."

   v. an email titled "Let us fantasize about a terrible human being masquerading as a judge dying," in which defendant LIPMAN wrote, an elaborate fantasy about K.R. being tortured and killed by the founding fathers.  The email further states, "Let us imagine" several American historical figures "breaking into [K.R.'s] house in the middle of the night and removing her at gun point."  Defendant also wrote, "Lets imagine [K.R.] being dragged to the gallows.  [K.R.] is begging and pleading like a nazi, saying she was just following orders.  people throw feces on her.  they throw urine on her.  [K.R.] is stipped naked and forced to walk . . . By the time [K.R.] gets to the gallows she is silent.  They hang her" and "[K.R.] doesnt die right away.  She suffocates.  It takes minutes.  [K.R.'s] face turns purple.  Her eyes get red.  Her blood vessels pop.  All the fluid in her face comes out of her eyes and mouth.  she can no longer even be the only person who would cry about her death . . . Then [K.R.] is beheaded.  Her head is placed on a stick.  Her limbs and body parts sold as souvenirs.  200 years later her ribcage still hangs in a tavern."

   vi. an email titled "knives over guns," in which defendant wrote, "guns are too quick," and "now I could be talking about in a movie tv show.  I could be talking about in a book.  I could be talking about a radio play."

   vii. an email in which defendant wrote, "the ted bundy's.  The people who target an individual.  They get the attention. . .  They generally dont use don't use guns either.  it's

7

the gun that usually gets them caught.  They just like strangle people or use knives.  and then one day they screw up their routine and use the gun they had just in case and their story ends.  But its the people who use their hands that make the most noise long term."

        viii.   an email in which defendant wrote, "no one said [K.R.] will have a knife held to her throat," and "she deserves to imagine a knife being held to her through though."

        ix.   an email titled "Its lung cancer though right!?" in which defendant wrote, "the real fantasy is [K.R.'s] body betraying her and her being forced to sit in a room, struggling to survive herself.  Struggling to get her lungs or heart to work.  dealing with one of the great human ironies of all.  Not wanting to die, but wanting to die.  Fighting death for way so long that eventually you realize its the best thing that could happen."

        x.   an email titled "A violent terroristic threat," in which defendant wrote, "make sure to remove [defendant's] right to own weapons.  Don't just limit it to guns."

    h.   On September 22, 2023, defendant sent an email to [K.R.] and others in which he wrote, "The world would be better off if you all died" and "I want you to spend years contemplating suicide over your failing health.  Having to choose between another year of labored breathing or potentially going to hell for suicide."

**IV.   LEGAL AND EVIDENTIARY ISSUES**

    **A.   Hearsay**

At trial, government witnesses will testify as to statements made to (or directed towards) them by defendant.  The government will seek to admit various forms of defendant's statements, including emails, social media posts, and voicemails.  When offered

8

by the government, statements by a defendant are admissions by a party-opponent. Fed. R. Evid. 801(d)(2); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). Moreover, courts routinely admit electronic evidence, like emails, as party admissions in criminal cases. See, e.g., United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) ("The statements [in emails] attributed directly to [defendant] come in as admissions by a party opponent under Fed. R. Evid. 801(d)(2)(A)"); United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000) ("Those [emails] sent by [defendant] constitute admissions of a party"); see also United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985) (holding that letters and deposit slips signed by defendant are express admissions). Thus, defendant's statements in emails, voicemails, social media posts, and videos are admissible against defendant. These statements are admissible because they are party-opponent statements that are not hearsay under Federal Rule of Evidence 801(d)(2)(A).

While the government may present evidence regarding defendant's statements, such statements, if offered by defendant either through cross-examination of government witnesses or through his own witnesses, are inadmissible hearsay. Ortega, 203 F.3d at 682 (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay); see also United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (holding the district court properly sustained government's hearsay objection to defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent). A defendant may not avoid testifying by introducing his own self-serving hearsay statements. See United States v. Mitchell, 502 F.3d 931, 964-65

(9th Cir. 2007) (upholding district judge's ruling precluding on hearsay grounds defense counsel from attempting to elicit defendant's exculpatory statements); Ortega, 203 F.3d at 682 (same).

### B. Provisional Admission of Evidence Pending Foundation

The government may request that the Court provisionally admit certain exhibits pending the foundation being established by a later witness. With its burden of proof, this is necessary for the government to present its case in a logical and coherent manner as it is entitled to do under Old Chief v. United States, 519 U.S. 172, 186-89 (1997).

### C. Summary Charts

The government intends to introduce two charts summarizing voluminous records of defendant's communications to K.R. pursuant to Rule 1006.

#### 1. Exhibit 2 (Chart of Messages from Defendant)

Exhibit 2 is a chart summarizing messages sent by defendant from various email accounts from February to September 2023. It includes the email account used, the number of emails sent, and the recipients of the emails. The underlying records were produced in discovery and a draft of the chart will be made available to standby defense counsel prior to the pretrial conference. The government anticipates meeting-and-conferring with defendant and his stand-by counsel about the government's exhibit list, including this exhibit, on March 6, 2024.

#### 2. Exhibit 3 (Chart Highlighting Messages from Defendant)

Exhibit 3 is a chart highlighting messages sent by defendant from various email accounts from February to September 2023. It

excerpts potions of the messages and provides the date/time and recipients of the messages.  The underlying records were produced in discovery and a draft of the chart will be made available to standby defense counsel prior to the pretrial conference.  The government anticipates meeting-and-conferring with defendant and his standby counsel about the government's exhibit list, including this exhibit, on March 6, 2024.

**D.    Lay (Non-Expert) Witness Testimony**

The government will not seek to admit any expert testimony.  On February 29, 2024, the government provided to defense counsel its witness list and its position that none of the witnesses would be providing expert testimony.

FBI Special Agent Jacob Tomes, who reviewed the electronic copies of multiple digital devices, is expected to testify about the contents found on them.  The government is not proffering Agent Tomes' testimony as expert testimony and submits that such testimony is not expert testimony.

//

11

**E.    Pending Motions**

As of the date of this filing, there are two pending motions in limine filed by the government (Dkt. Nos 57, 58).  Defendant's motion to dismiss (Dkt. 59) is pending and will be heard by this Court on March 8, 2024.

```
 Dated: March 1, 2024           Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK JENKINS
                                Assistant United States Attorneys
                                Chief, Criminal Divisions


                                      /s/
                                CLIFFORD D. MPARE
                                DANIEL H. WEINER
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA
```