FILED
CLERK, U.S. DISTRICT COURT
MAR 18, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_PMC\_\_\_\_ DEPUTY

2:23-cr-00491-FLA
U.S. v Jonathan Lipman

In 2023, the supreme court heard and opined on a stalking case that involved the government of Colorado attempting to prescribe a stalking statute through claims messages were "true threats". On appeal, the Supreme Court in this 2023 case titled "Counterman v Colorado", vacated the stalking conviction, holding that for true threats that may be outside of first amendment protection, the first amendment still requires that a defendant had some subjective understanding of the threatening nature of his statements, and a mental state of recklessness was sufficient. The Supreme Court ruled the government must show that the defendant consciously disregarded a substantial risk that his communication would be viewed as threatening violence. The supreme court decided that the petitioners prosecution in accordance with an objective standards was a violation of the first amendment because the state had to show only that a reasonable person would understand his statement as threats. The victim in this case was a private person. What I state next is nearly verbatim the opinions of Elena Kagan and Sonia Sotomayor, with some opinions of Amy Coney Barrett from her dissent of the courts 7-2 majority opinion on true threats prosecutions and vacating the conviction.

The "petitioner was convicted for stalking for a combination of threatening statements and unwanted repeated contact." "The evidence the state proposed to introduce at trial were his facebook messages to [the victim]. Billy Counterman sent hundreds of facebook messages to C.W., a local singer and musician. The two had never met, and C.W never responded." "Some of the messages were utterly prosaic (Good

2:23-cr-00491-FLA                                         2

morning sweetheart; I am going to the store would you like anything?'); except they were coming from a ~~stranger~~ total strange Others suggested that Counterman might be surveilling [her]. He asked 'was that you in the white Jeep?', referenced 'a fine displa with your partner,' and noted 'a couple [of] physical sightings.' ... And most critically, a number expressed anger at C.W. and envisaged harm befalling her: 'Fuck off permanently.' Ibid. 'Staying in cyberlife is going to kill you.' Ibid 'You're not good at human relations. Die.'" (Kagan)

"Colorado charged Counterman with a statute making it unlawful to 'repeatedly ... make any form of communication with another person' in 'a manner that would cause a person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress'. Colo. Rev. Stat. 18-3-602(1)(c)(2022). The only evidence the State proposed to introduce at trial were his facebook messages (Kagan) "The state had no evidence, beyond what Counterman ~~said~~ claimed, that he ~~had~~ actually had followed or surveilled C.W. For example, C.W. had never noticed anything of that kind. So the prosecution based its case solely on Counterman's 'repeated... communications' with [the victim]. Ibid" (Footnote)

"Counterman moved to dismiss the charge on first amendment grounds, arguing that his messages were not 'true threats' and therefore could not form the basis of a criminal prosecution In line with the Colorado law, the trial court assessed the true threats issue using an 'objective' reasonable person' standard. People v Cross 127 P.3d 71, 76 (Colo 2006). Under that standard, the state had to show that a reasonable person would have viewed the

2:23-cr-00491-FLA                                                                 3

facebook messages as threatening. By contrast, the state had no need to prove that Counterman had any subjective intent to threaten C.W.. The Court decided after 'considering the totality of the circumstances, that Counterman's statements 'rose to the level of~~above~~ a true threat'.... Because that was so, the court ruled, the first amendment posed no bar to the prosecution. Th court accordingly sent the case to the jury, which found Counterman guilty as charged." (Kagan)

"We ... hold[] that the state must prove in true threats cases that the defendant ha[s] some understanding of his threatening character." "Counterman .... was prosecuted in accordance with an objective standard. The state only had to show that a reasonable person would understand his statements as threats. It did not have to show any awareness on his part that the statements could be understood that way. For the reasons [about to be] stated, that is a violation of the first amendment. We accordingly vacate the judgement of the Colorado Court of appeals and remand this case for further proceedings not inconsistent with this opinion." (kagan)

"An objective standard, turning only on how reasonable observers would construe a statement in context, would make people give threats 'a wide berth'. And so use of that standard would discourage the 'uninhibited, robust, and wide open debate that the first amendment is intended to protect.' "True threats of violence is a historically unprotected category of communication But the ban on an objective standard remains the same." "The 'true' in that term distinguishes what is at issue from jests, hyperbole

or other statements that when taken in context do not convey a real threat". (Kagan)

"There is no well-settled history showing that it is enough for a defendant to be merely aware of some of the risk that their statements could be threatening. See Borden v U.S." "The first amendments mantle covers speech that is vituperative, abusive, and inexact. Watts. It might be tempting to dismiss seemingly low value speech as unworthy of... robust first amendment protections' Mahanoy Area School District v B.L 594 U.S. 141 S. Ct. 2038, 210 L. Ed. 2d 403, 414 (2021). Yet most of what we say to one another lacks religious, political, scientific, educational, journalistic, historical, or artistic value (let alone serious value), but it is still sheltered from government regulation. U.S. v Stevens 559 U.S. 479, 130 S. Ct. 1577, 176 L. Ed. 2d 435") (Sotomayor).

"When the government seeks to punish speech based on its content, the first amendment typically imposes stringent requirem This ensures that the government, even when pursuing compelling objectives, does not unduly burden our nations committment to free expression." "Speakers whose ideas or views occupy the fringes of our society have far more to fear for their violent and extreme rhetoric, even if intended to simply convey an idea or simply express a displeasure, [are] more likely to strike a reasonable person as threatening. United States v White 670 F.3d 49 525 (Ca4 2012)" (Sotomayor)

In dissent with Clarence Thomas concurring, Amy Coney Barrett offered some concurrence to the seven Justice majority's first amendme

opinions. "I will give the court this much. Speakers must specifically intend to incite violence before they lose first amendment protection. Brandenberg v Ohio." "To make a true threat, the speaker must express an intent to commit an unlawful act of violence. [Virginia v] Black." "Speech that is merely 'offensive', 'poorly chosen', or 'unpopular' does not qualify". "The government can counteract true threats by means of civil enforcement" (Amy Coney Barrett). Amy Coney Barrett cites a law that issues fines as first offenses, but I offer this includes a restraining order, which was not sought by my alleged victim.

"Repeatedly forcing intrusive communications directly into the personal life of 'an unwilling recipient also enjoys less protection. Rowan v United States Post Office Dept 397 U.S. 728, 738 90 S.Ct. 1484 25 L. Ed. 2d 736 (1970)". (Kagan) For the record I did not repeatedly force communications into my alleged public victims personal life. At most I made one voice message about their public life to a neighbor that as a New Jersey constituent is part of my alleged victims private and public life. "The states interest in ~~significantly greater access to the channels of effective communication~~ protecting public figures is significantly weaker, since they tend to enjoy significantly greater access to the channels of effective communication" (Barrett) including the New Jersey Judicial Security Unit on speed dial or email formatting with nearly instantaneous response.

"Prosecuting threatening statements made as a course of stalking does not squarely present the hardest questions about the mens rea required to prosecute isolated utterances based solely on their content" (Sotomayor)

The footnotes add "for these reasons, ~~a~~ stalking prosecution that do not rely on the content of communications would raise even fewer first amendment protections" (footnote of Sotomayor). "Guided by our precedent, we hold that recklessness is enough" (Kagan).

"Recklessness offers the right path forward" (Kagan) [When determining the type of subjective standard the first amendment requires]. Kagan, Kavanaugh, Roberts, Alito, and Jackson concurred in this recklessness standard. Goldilocks was actually quoted as it being "just right". Sotomayor with 6 or such concurring said they "would not reach the distinct and more complex question of whether a mens rea of recklessness is sufficient for true threats prosecutions generally," though they "agree[d] in this particular case where petitioner was prosecuted for stalking that involved threaten statements, a mens rea of recklessness is amply sufficient." Sotomayor added that "requiring nothing more than a mens rea of recklessness is inconsistent with precedent, history, and to even harmful speech that the first amendment enshrines" (Sotomayor) when there is no element of in person, direct contact or surveillance.

"A person acts recklessly, in the most common formulation, when he consciously disregards a substantial ~~cost~~ [and ~~unjustified~~ unjustifiable] risk that the conduct will cause harm to another." Voisine v U.S. 579 U.S. 686, 691 136 S. Ct. 2272 195 L. Ed. 736 (2016). That standard involves insufficient concern with risk, rather than awareness of impending harm.' See Borden v U.S. 593 U.S. 141 S.Ct. 1817 210 L. Ed. 2d 736 (2021)". "That standard, again, is recklessness. It offers 'enough' breathing space' for protected

2:23-cr-00491-FLA

7

speech", without sacrificing too many of the benefits of enforcing laws against true threats. See Elonis." (Kagan)

"Bans on speech have the potential to chill, or deter, speech outside their boundaries. An important tool to prevent that outcome is to condition liability on the states showing of culpable mental state.' Speiser v Randall 357 U.S. 513, 526 78 S.Ct. 1332, 2 L. Ed. 2d 1460" (Case summary).

"A subjective standard is still required for true threats, lest prosecutions chill too much protected, non-threatening expression."

"Such a requirement comes at a cost: It will shield some proscribable (here threatening) speech because the state cannot prove what the defendant thought. But the added element reduces the prospect of chilling fully protected expression."

"The reasoning - and indeed some of the words - came straight from this courts decisions insisting a subjective element in other unprotected speech cases, whether involving defamation, incitement, or obscenity." (Kagan)

"This does not require a showing that an individual intends to carry through with a threat. But it does require showing that an individual desires to threaten or is substantially certain that her statement will be understood as threatening." "Traditionally, one intends certain consequences when he desires that his acts cause those consequences or knows those consequences are substantially certain to result from his acts.' Tison v Arizona 481 U.S. 137, 150 S.Ct. 1676 95 L. Ed. 2d 127 (1987)" (Sotomayor)

"In this particular case, where petitioner was prosecuted for stalking that involved threatening statements, a mens rea of recklessness

2:23-cr-00491-FLA

8

is amply sufficient." "The First amendment would normally place strict limits on such prosecutions. So there is typically a need to determine whether the speech in questi falls within the traditionally unprotected category of true threats. [Counterman v Colorado] is not such a case however Petitioner was convicted for 'stalking [causing] serious emotional distress' for a combination of threatening statements AND repeated unwanted repeated, unwanted direct contact with [the victim]." (Sotomayor) Remember "Counterm claimed that he had actually followed and surveilled [the victim]." (footnotes) "There is simply no need to reach out in [Countermans] stalking case to determine whether anything more than recklessness is needed for punishing true threats generally." (Sotomayor)

The Indictment and allegations by the government in United States v Jonathan Lipman do not even reach the level of recklessness of Billy Counterman in "Counterman v Colorado" where 7-2 the supreme court vacated his conviction because he did not reach their recklessness standard, if recklessness even applies at all because Counterman through his protected speech still claimed surveillance and stalking, and most likely did surveil and stalk. His communications, which were to a private person, which included telling a private person to die and that their death was better for human relations, also included direct insinuations of direct contact and intrusions into his alleged victims personal life, "For

opinions. "I will give the court this much. Speakers must specifically intend to incite violence before they lose first amendment protection. Brandenburg v Ohio." "To make a true threat, the speaker must express an intent to commit an unlawful act of violence. [Virginia v] Black." "Speech that is merely 'offensive', 'poorly chosen', or 'unpopular' does not qualify". "The government can counteract true threats by means of civil enforcement" (Amy Coney Barrett). Amy Coney Barrett cites a law that issues fines as first offenses, but I offer this includes a restraining order, which was not sought by my alleged victim.

"Repeatedly forcing intrusive communications directly into the personal life of 'an unwilling recipient also enjoys less protection. Rowan v United States Post Office Dept 397 U.S. 728, 738 90 S.Ct. 1484 25 L. Ed. 2d 736 (1970)". (Kagan) For the record I did not repeatedly force communications into my alleged public victims personal life. At most I made one voice message about their public life to a neighbor that as a New Jersey constituent is part of my alleged victims private and public life. "The states interest in ~~significantly greater access to the channels of effective communication~~ protecting public figures is significantly weaker, since they tend to enjoy significantly greater access to the channels of effective communication" (Barrett) including the New Jersey Judicial Security Unit on speed dial or email formatting with nearly instantaneous response.

"Prosecuting threatening statements made as a course of stalking does not squarely present the hardest questions about the mens rea required to prosecute isolated utterances based solely on their content" (Sotomayor)

2:23-cr-00491-FLA                                                4

or other statements that when taken in context do not convey a real threat". (Kagan)

"There is no well-settled history showing that it is enough for a defendant to be merely aware of some of the risk that their statements could be threatening. See Borden v U.S." "The first amendments mantle covers speech that is vituperative, abusive, and inexact. Watts. It might be tempting to dismiss seemingly low value speech as unworthy of ... robust first amendment protections' Mahanoy Area School District v B.L. 594 U.S. 141 S.Ct. 2038, 210 L. Ed. 2d 403, 414 (2021). Yet most of what we say to one another lacks religious, political, scientific, educational, journalistic, historical, or artistic value (let alone serious value), but it is still sheltered from government regulation. U.S. v Stevens 559 U.S. 479, 130 S.Ct. 1577, 176 L. Ed. 2d 435" (Sotomayor).

"When the government seeks to punish speech based on its content, the first amendment typically imposes stringent requirem This ensures that the government, even when pursuing compelling objectives, does not unduly burden our nations committment to free expression." "Speakers whose ideas or views occupy the fringes of our society have far more to fear for their violent and extreme rhetoric, even if intended to simply convey an idea or simply express a displeasure, [are] more likely to strike a reasonable person as threatening. United States v White 670 F.3d 498 525 (Ca4 2012)" (Sotomayor)

In dissent with Clarence Thomas concurring, Amy Coney Barrett offered some concurrence to the seven Justice majority's first amendme

2:23-cr-00491-FLA                                                    2

morning sweetheart; I am going to the store would you like anything?'); except they were coming from a ~~stranger~~ total strange Others suggested that Counterman might be surveilling [her]. He asked 'was that you in the white Jeep?', referenced 'a fine display with your partner,' and noted 'a couple [of] physical sightings.' ... And most critically, a number expressed anger at C.W. and envisaged harm befalling her: 'Fuck off permanently'. Ibid. 'Staying in cyberlife is going to kill you.' Ibid 'You're not good at human relations. Die." (Kagan)

"Colorado charged Counterman with a statute making it unlawful to repeatedly... make any form of communication with another person' in 'a manner that would cause a person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress'. Colo. Rev. Stat. 18-3-602(1)(c)(2022). The only evidence the state proposed to introduce at trial were his facebook messages (Kagan) "The state had no evidence, beyond what Counterman claimed, that he had actually had followed or surveilled C.W. For example, C.W. had never noticed anything of that kind. So the prosecution based its case solely on Counterman's 'repeated... communications' with [the victim]. Ibid" (Footnote)

"Counterman moved to dismiss the charge on first amendment grounds, arguing that his messages were not 'true threats' and therefore could not form the basis of a criminal prosecution In line with the Colorado law, the trial court assessed the true threats issue using an 'objective 'reasonable person', standard.' People v Cross 127 P.3d 71, 76 (Colo 2006). Under that standard, the state had to show that a reasonable person would have viewed the



2:23-cr-00491-FLA                                      9

[this] reason, his prosecution [did] not rely [struck] [solely] on the [struck]content of communications [and] [struck] raise[d] fewer first amendment concerns." (footnote)

Counterman also, as the U.S. Government acknowledges I, Jonathan Lipman did, did not "attempt to characterize these statement not as threats, but as fantasy, an exercise in first amendment rights, and expression" (Gov opposition... motion to dismiss page 16 line 21). Counterman did not " point to qualifications in some of [his] messages (Gov opposition... motion to dismiss page 16 line 24) and his messages " were [not] cabined by statements about his non violent nature and other qualifications [struck] [word omitted] in [struck] some of his messages" (Gov. opposition... motion to dismiss page 10 line 13.). Counterman did not include in his statements "Fuck off permanently" or " You're not being good for human relations. Die", "I am not violent and would never cause [your death] as Jonathan Lipman did.

Counterman simply sent his messages to an alleged victim not issuing rulings on constitutional amendments including the first amendment, gave his alleged victim no qualifications, and let her mind run wild. Counterman's speech was way more reckless in its disregard that his speech would lead one to fear bodily harm by not stating in any way he [struck] didn't intend to cause it or he w[struck] wasn't actually surveilling and following his alleged victim. See Voisine v United States.

I showed concern every time I stated no intent to harm or injure and in every attempt I made to state I was exercising my first amendment rights. I avoided reckless disregard,

2:23-cr-00491-FLA                                                                 10

or at least attempted, to avoid substantially risking harm to another. My statements were not unjustifiable either. They were and are justified by the removal of civil and constitutional rights by a County Government and its fellow governments to cover up that communities racism and antisemitism that substantially altered the course of numerous lives, not just my own.

    Theres a reason the government withholds the full record of my speech. Theres a reason the government attempts to exclude testimony of antisemitism. Theres a reason the government doesn't include Youtube videos recorded hours within my sending of messages they deem stalking discussing those messages intent. Theres a reason the government doesn't call as a witness the New Jersey State police detective Harrison investigating me on behalf of the New Jersey Judicial Security unit at least until August 23rd, 2023 when he spoke to my father, that I spoke to hours after sending my first alleged stalking threats. The government doesn't want me to be able to share my intent in an intent case because they know it destroys and nullifies their prosecution.

    I did everything I could to avoid the recklessness of allowing my alleged victim to think my messages were threats I might act upon. Following these messages of protest to Judge Rahil email address and the Ocean County courts phone system the government is claiming was Erin Caufield, I called law enforcement agencies in Ocean County to tell them I was threatening no one and nothing in spite of the fact these messages didn't make threats any way and claimed no

2:23-cr-00491-FLA                                               11

course of action. I spoke to New Jersey State Police Detective Harrison, answered his questions, and stated over and over again I was threatening no one, would never harm a person, and was only exercising my first amendment rights. Detective Harrison even agreed I was exercising my first amendment rights. I then put this video on youtube of this conversation with the detective making clear I was threatening no one and exercising my first amendment rights to my alleged victim judiciary email address alleged to be stalked so that this judge had no doubt my words were protest and not threats.

My alleged victim is a judge, as Amy Coney Barrett points out that deserves less state interest in protecting from speech proscribed as true threats to attempt a charge of stalking because this judge "enjoy(s) significantly greater access to the channels of effective communication" (Barrett) to deal with danger. My alleged victim had a sheriffs department and a state police department available for protection. This judge is part of a government New Jersey, that demonstrated they had the Los Angeles Police Department on their command to respond to me with no notice and a few hours or less. I was literally informed sometime in October or November 2022 by Judge Rahill through Erin Canfield, that the New Jersey State Police Unit the regional operations intelligence center had been secretly surveilling my communications; and it was them and not the Lacey Township police department as Judge Benjamin Mabie, another Judge I allegedly sent similiar communications to, claimed in his temporary order to remove my second amendment rights, without my involvement in the hearing

2:23-cr-00491-FLA                                                                        12

or due process of law.

    I had ~~and reason~~ plenty of reason to believe my alleged victim had no remote, real, or substantial risk of impending harm, bodily injury, or death, or danger. I believed my alleged victim had the common sense and awareness that these government agencies she knew were surveilling my ~~communi~~ communications would alert the judge or court security if I bought a plane ticket or drove through an interstate toll booth or traffic camera on my 3000 mile journey to New Jersey. My knowledge of this public officials connections to law enforcement ~~and~~ that called me within a few hours of sending an email with a ~~prop gun~~ photo of a prop gun ~~in the photo~~ ~~photos~~ and the question to this judge is a photo a crime, left me with no reason to consciously regard there was a substantial ~~risk~~ and unjustifiable risk these communications would cause a reasonable fear of bodily harm and substantial emotional distress

    I was protesting the State of New Jersey sending the LAPD to break into my home, occasionally guns drawn in the ~~middle~~ middle of the night. I thought a reasonable person would understand I was the one at risk of bodily harm from New Jerseys ~~contact~~ communications to Los Angeles. I thought it was obvious I was the one in danger f~~rom~~ this surveillance and unwanted contact by law enforcement for years on New Jerseys request.

    I should have had the opportunity to say all this to the magistrate court before my detention, but the government robbed me of that opportunity when it arrested me and detained me for the charge of threats 18 U.S.C. 875(c) instead of stalking. Pursuant to

5.1(a), "If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless: (1) the defendant waives the hearing (which I did not); (2) the defendant is indicted (I was indicted 9 days after arrest and about 30 days after the magistrates determination of probable cause for a warrant, so this is a manufactured exemption by a federal government that failed to do its due dilligence before arresting me) or (3) the government files an information under rule 7(b) charging defendant with a felony (which I am assuming the affadavit wrongly stating there was probable cause for arrest of 18 U.S.C. 875(c) threats by interstate communication can be used to subvert).

Rule 5.1(b) states "a defendant arrested in a district other than where the offense was committed may elect to have the preliminary hearing conducted in the district where the prosecution is pending." Its worth noting that most cyberstalking cases are charged in the district the alleged victim lives, not where the defendant lives. See United States v X. Wallace (2024) a cyberstalking case involving a Los Angeles resident sending personally contented emails to Florida and held in Metropolitan Detention Center Los Angeles until extradition. Either the government charged me here because they know its an intent case or they didn't want to admit they made an error and threats would be proscribed in California but stalking would be proscribed in New Jerseys district.

After all governments subversions to exclude evidence, prevent me access to a fair pretrial, and attempts to withhold my intent its fair to consider the government conducted itself to prevent

me from exercising federal rule of criminal procedure 5.1(e). Rule 5.1(e) states at a "preliminary hearing, the defendant may cross examine adverse witnesses and may introduce evidence but may not object to evidence on the ground it was unlawfully acquired. According to Rule 5.1(f) "if the magistrate found no probable cause to believe an offense has been committed, the magistrate judge would have to dismiss the complaint and discharge the defendant". I, the defendant would be free to gather my evidence of intent like youtube videos in case the government initiates a future prosecution. Of course, charging me with the wrong crime there was no probable cause and holding me until indictment, skirts Rule 5.1(a), (e), and (f).

I came across rule 5.1 in the 9th circuit case "U.S. v Infante, 2010", a case involving cross country visits to a women who didn't want the contact, but not much of the speech against a government the government wants to restrict, in spite of numerous supreme court and appeals court rulings 18 U.S.C. 2261A, whether its part (1) or part (2), proscribes stalking, not speech.

"United States v Tobin 480 F.3d 53 1st circuit 2007 found that the interstate stalking statute requires proof that a defendant have a subjective purpose to harass. As discussed above, there is no evidence establishing probable cause that defendant had a purpose of harassing" (U.S. v Infante 2010) in the constitutionally proscribing sense or as the commission of stalking. In U.S. v Jordan 2008 591 F. Supp 2d, "the southern district of NY found that the interstate stalking statute requires the government to prove that defendant acted knowingly and with a specific intention" (U.S. v Infante

2:23-cr-00491-FLA                                    15

to stalk.

"From the express language used by congress in adopting 18 U.S.C. 2261A, the issue is not whether the government presented sufficient evidence that a reasonable person would find defendants conduct consisted of harassment of [the victim]; rather the issue is whether the government presented sufficient evidence to show that the defendants conduct was done with 'the intent and purpose' to harass [the victim]." (U.S. v Infante 9th circuit 2010)

"The court should not consider evidence not appearing on the indictment" U.S. v Jensen 93 F. 3d 667, 669 (9th Cir 1996) "The district court is bound to the four corners of the indictment" (U.S. v Boren 278 F. 3d 911, 914 9th Cir. 2002) According to the Supreme Court in "Counterman v Colorado" (2023) 'a persons of ordinary prudence and caution [can not] entertain a reasonable belief' that defendants ... conduct ... was with intent and purpose to harass [Judge Kimarie Rahill]" (U.S. v Infante 2010) because true threats prosecutions "ban on an objective standard" that "turn[s] on how reasonable observers would construe a statement in context [as if it] would make people give threats a wide berth. And so use of that standard would discourage the uninhibited, robust, and wide open debate that the first amendment is intended to protect" (Counterman v Colorado). A violation of the first amendment.

"In conclusion, the complaint should [have been] dismissed pursuant to rule 5.1(f), Fed R. Crim. P., because the government [] failed to establish probable cause exists that defendant had

2:23-cr-00491-FLA							16

the requisite intent to harass, a necessary element to the Federal Interstate Stalking Statute 18 U.S.C. 2261A."

The government failed and continues to fail to present any evidence of my intent to harass, threaten, or intimidate. As the governments exhibit list, trial memorandum, and witness demonstrate the governments case rests solely on opinions and interpretations of the intent of speech "law enforcement officers were particularly unqualified to comment on" (U.S. v Hanna 9th Cir 2002). The indictment against me must be dismissed.