UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JONATHAN LIPMAN,<br><br>　　　　　　　　Defendant. | Case No. 2:23-cr-00491-FLA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [DKTS. 59, 75, 83, 121]** |

## RULING

Before the court is defendant Jonathan Lipman's ("defendant" or "Lipman") Motion to Dismiss the Indictment.[1] Dkts. 59, 75, 83, 121.[2] Plaintiff the United States of America (the "government") opposes the Motion. Dkts. 66, 125. The Motion came to hearing on March 15, 2024. Dkt. 85.

For the reasons stated herein, the court DENIES defendant's Motion in its entirety.

## BACKGROUND

On October 4, 2023, the grand jury returned the indictment in this action, charging defendant with using an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce with the intent to harass and intimidate the victim, K.R.,[3] in violation of 18 U.S.C. §§ 2261(b)(5) ("§ 2261(b)(5)") and 2261A(2)(A), (B) ("§ 2261A(2)(A), (B)").[4] Dkt. 12.

---

[1] The Motion and its reply and supplemental statements (collectively, the "Motion") are over 140-pages long in single space typeset. Dkts. 59, 75, 83, 121. The Motion includes numerous arguments, some of which relate to the requested dismissal of the indictment. Defendant filed the Motion when he was in *pro se* status. Defendant, now represented by counsel, has asked the court to rule on the Motion. Although the Motion is subject to being stricken given its impermissible formatting and length, *see* Local Civil Rule 7-4, Local Criminal Rule 57-1, the court exercises its discretion and considers the Motion to the extent its arguments are discernible and relate to defendant's request to dismiss the indictment.

[2] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers listed on documents natively.

[3] For the sake of the alleged victim's privacy, the court will refer to the victim by her initials in this Order, rather than by her full name.

[4] On March 22, 2024, the government elected to proceed at trial solely under the theory that defendant violated § 2261A(2)(B). Dkt. 88 at 3. For the sake of completeness, the court will address the parties' arguments regarding both subdivisions (A) and (B), in the subject Order.

On February 8, 2024, defendant filed the subject Motion, requesting the court dismiss the indictment on the following grounds:

(1)   The indictment does not set forth each element of the crime it charges;

(2)   the contents of the indictment violate federal rules of criminal procedure 7(c)(1) and are not a "plain, concise, and definite written statement of facts constituting the offense charged";

(3)   the federal governments failure to investigate "the whole record" (Bose Corp v Consumers Union of the United States Inc, 1949), instead relying on the investigation by the state of New Jersey, forces the court to have to exercise rule 403 and exclude all "evidence" of the case due to the partiality of that evidence violating "the peoples" and the defendants right to the full truth of "the whole record" and "justice";

(4)   the indictment fails to sufficiently charge an offense proscribable by the legal definitions of the "conduct" alleged that the statute criminalizes ("intimidation" and "harassment");

(5)   the indictment as-applied violates the defendants first amendment rights;

(6)   the factual allegations presented in indictment and discovery are insufficieant for a rational factfinder to conclude beyond a reasonable doubt that any "person" suffered substantial emotional distress or fear of bodily harm;

(7)   the indictments application in this particular case is unconstitutionally overbroad;

(8)   2261A(2)(A) is unconstitutionally vague;

(9)   2261A(2)(A) is unconstitutionally overbroad;

(10)  the proscription of 2261A(2)(A) violates the eighth amendment; and

(11)  The search warrant and/or gathering of evidence violated defendants 4th amendment rights.

Dkt. 59 at 2 (errors in original).  Defendant also argues the indictment should be dismissed for violation of 18 U.S.C. § 3161, the Speedy Trial Act of 1974.  *See* Dkt. 59 at 6–11.  On March 5 and 15, and August 12, 2024, defendant filed a reply and two

supplemental statements in support of the Motion.  Dkts. 75, 83, 121.[5]

On April 4, 2024, the court ordered defendant to undergo a competency evaluation and appointed counsel to represent defendant pending the competency determination.  Dkt. 101.  On July 24, 2024, the court found defendant was not competent to represent himself in *pro se.*  Dkt. 119.  On August 12, 2024, defendant, acting through counsel, requested a ruling on the Motion filed as Dkt. 59, as supplemented by Dkts. 75, 83, and 121.  Dkts. 121 at 2.

## DISCUSSION

### I.    Legal Standard

Under Fed. R. Crim. P. 12(b)(1) ("Rule 12(b)(1)"), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Additionally, under Rule 12(b)(3)(B)(v), a defense based on "a defect in the indictment or information, including: … (v) failure to state an offense" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]"

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).[6]  "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been

---

[5] Defendant's filing includes other requests beyond the Motion, which are not included within the scope of this Order and will be addressed by the court separately. *See id.* at 44–90.

[6] Defendant contends the Third Circuit's rulings are applicable and binding here, because that is the federal appellate court which covers New Jersey, where K.R. resided at all relevant times.  Dkt. 59. at 32.  Defendant is mistaken, as this court falls under the appellate jurisdiction of the Ninth Circuit.  Nevertheless, for the sake of completeness, the court will address defendant's discussion of Third Circuit jurisprudence—which is non-binding, persuasive authority only.

charged." *Id.* "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *Id.* "The Court should not consider evidence not appearing on the face of the indictment." *Id.*

## II. Analysis

### A. Defendant's Right to a Speedy Trial

Defendant moves to dismiss the indictment for violation of his rights to a speedy trial under the Speedy Trial Act of 1974 (the "Speedy Trial Act") and the Sixth Amendment. Dkt. 59 at 6–11. Defendant contends the court's November 20, 2023 Order continuing the trial date and finding time excludable was improper and invalid, because it was issued over his objection. *Id.* at 9–11.

### 1. The Speedy Trial Act

The Speedy Trial Act provides in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an … indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the … indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) ("§ 3161(c)(1)"). The following period of delay is excluded in computing the time within which the trial of a charged offense must commence:

> **Any period of delay resulting from a continuance granted by any judge** on his own motion or **at the request of the defendant or his counsel** or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(7)(A) (emphasis added).

Defendant was arrested on the Criminal Complaint and first appeared before the court on September 26, 2023.  Dkt. 5.  The government filed the Indictment on October 4, 2023.  Dkt. 12.  On November 14, 2023, the Federal Public Defender and the government filed jointly the Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act ("Stipulation for Continuance").  Dkt. 24.

On November 20, 2023, the court granted the requested continuance after finding: (1) the Stipulation for Continuance demonstrated facts that supported a continuance and provided good cause for excluding time pursuant to the Speedy Trial Act; (2) the ends of justice served by the continuance outweighed the best interest of the public and defendant in a speedy trial; (3) failure to grant the continuance would be likely to make a continuation of the proceeding impossible or result in a miscarriage of justice; and (4) failure to grant the continuance would unreasonably deny defendant continuity of counsel and would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.  Dkt. 29 at 1–2.  The court incorporated the Stipulation for Continuance into the November 20, 2023 Order, by reference.  *Id.* at 1.

Defendant did not file any motions or documents that could be construed as a request for self-representation until December 8, 2023, at the earliest.  *See* Dkt. 30.  It is undisputed defendant was represented by the Federal Public Defender when she filed the Stipulation for Continuance without government opposition.[7]  Thus, the

---

[7] The court received letters from defendant on December 15, 20, and 28, 2023, which were stricken as defendant was represented by counsel and not authorized to file motions directly.  Dkt. 40.  On January 3, 2024, defendant filed an *ex parte* application for a status conference regarding self-representation.  Dkt. 39.  The *ex parte* application came to hearing on January 26, 2024, at which time the court granted defendant's request after finding defendant knowingly, voluntarily, and intelligently waived his right to be represented by counsel with a full understanding of that right and the consequences of self-representation.  Dkt. 51.

1  Federal Public Defender was legally authorized as counsel of record to request a trial

2  continuance over defendant's objection.  *See* 18 U.S.C. § 3161(h)(7)(A).

3      Defendant cites cases including *United States v. Brown*, 819 F.3d 800 (6th Cir.

4  2016), and *United States v. Crane*, 776 F.2d 600 (6th Cir. 1985), to argue the

5  Stipulation for Continuance should not have been granted because defense counsel

6  should have been prepared to proceed with trial without requesting a continuance.[8]

7  *See* Dkt. 59 at 6–9.  In those cases, the Sixth Circuit held the trial courts violated the

8  defendants' rights under the Speedy Trial Act by conducting *voir dire* prior to the

9  expiration of the seventy-day period, taking two-week recesses, and beginning trial

10  after the seventy-day period expired.  *See Crane*, 776 F.2d at 601–02; *Brown*, 819

11  F.3d at 803, 805–07.  The cases cited are inapposite to the circumstances here.

12      The Stipulation for Continuance was the first request for a continuance brought

13  in this action and filed only 49 days after defendant first appeared and was arraigned.

14  Dkts. 5, 24.  Furthermore, unlike in *Brown*, 819 F.3d at 811, and *Crane*, 776 F.2d at

15  605, where the defense counsel represented to the court that they were prepared to

16  proceed with trial, the Federal Public Defender here stated expressly that she needed

17  more time to prepare reasonably for trial.  Dkt. 24.  In these circumstances, the court

18  found it was reasonable for the Federal Public Defender to request additional time to

19  prepare effectively for trial.[9]  The court ultimately found, for the reasons stated on the

20  record, that the ends of justice served by granting the continuance requested

21

22  _____

23  [8] *Brown* and *Crane* are out-of-circuit opinions and do not constitute binding authority on this court.

24  [9] Even if the Federal Public Defender lacked diligence in representing defendant,

25  which the court expressly does not find, such unpreparedness would not constitute

26  grounds to find defendant's rights under the Speedy Trial Act were violated by the

27  continuance.  *See Crane*, 776 F.2d at 605 (recognizing "[d]efense counsel's

28  unpreparedness, even if due to a lack of diligence, could be a valid reason for finding that the failure to grant the continuance would have resulted in a miscarriage of justice.").

outweighed the best interests of the public and the defendant in a speedy trial.  Dkt. 29.  As the Federal Public Defender's request for a continuance and the court's decision to grant the request over defendant's objections were authorized by statute, defendant's rights under the Speedy Trial Act were not violated.

The court subsequently further continued defendant's trial date (with calculable time excluded) based on: (1) defendant's filing of multiple motions while in *pro se* (including the subject Motion), (2) defendant's competency evaluation and related proceedings, and (3) the availability of defense counsel after defendant was deemed incompetent to represent himself at trial.  *See* Dkts. 59, 63, 65, 65, 79, 84, 89, 93, 96, 98, 99, 101, 106, 110, 120.  These continuances and related exclusion of calculable time were also permitted by statute.  *See* 18 U.S.C. § 3161(h)(1)(A), (1)(D), (7).

Accordingly, the court finds defendant's rights under the Speedy Trial Act were not violated, and DENIES the Motion on this basis.

### 2.    The Sixth Amendment

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…."  U.S. Const. amend. VI.  "The Speedy Trial Clause limits the government's ability to delay criminal trials once it has 'arrested or formally accused' a defendant of a crime." *United States v. Lonich*, 23 F.4th 881, 893 (9th Cir. 2022) (citing *Betterman v. Montana*, 578 U.S. 437, 441 (2016)).

Courts apply a four-part balancing test to assess whether the Speedy Trial Clause was violated and consider: "(1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his rights, and (4) the prejudice to the defendant."  *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972)).  "Importantly, 'none of the four *Barker* factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant,' as

part of 'a difficult and sensitive balancing process.'" *Id.* (quoting *Barker*, 407 U.S. at 533) (brackets and ellipses omitted).

"The first *Barker* factor, the length of delay, is 'a double enquiry,' serving both as a triggering mechanism for the rest of the Speedy Trial Clause evaluation and a factor in that analysis." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). "The 'general consensus' is that an eight-month delay 'constitutes the threshold minimum' to initiate the full *Barker* inquiry." *Id.* "If the delay crosses that threshold, [courts] generally proceed to the four-factor *Barker* test." *Id.* "Although there is no bright-line rule, courts generally have found that delays approaching one year are presumptively prejudicial." *Id.* (quotation marks omitted).

Defendant contends his continued detention constitutes a violation of his right to a speedy trial under the Sixth Amendment. Dkt. 59 at 6. The government responds that defendant's arguments lack merit. Dkt. 66 at 28. Neither defendant nor the government cite specific legal authority in support of their arguments regarding the Sixth Amendment.

Defendant was detained and in custody for six months as of the March 15, 2024 hearing on the Motion. *See* Dkts. 5, 85. The trial was subsequently continued based on defendant's now-appointed counsel's request for a competency evaluation, the court's determination that defendant was not competent to represent himself at trial, and defense counsel's unavailability for an earlier trial date. Dkts. 100, 101, 119, 120. As of the currently scheduled trial date of December 10, 2024, defendant will have been detained and in custody for approximately 15 months. Because defendant's trial date has been continued and his pretrial detention extended almost entirely based on reasonable requests by defendant's counsel, including the need to assess defendant's competency, the court finds defendant's Sixth Amendment right to a speedy trial has not been violated. The court, therefore, DENIES the Motion on this basis.

/ / /

/ / /

### B.    Sufficiency of the Indictment

An indictment must give "a plain, concise, and definite written statement of the essential facts constituting the offense charged," as well as "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1) ("Rule 7(c)(1)"). "An indictment will withstand a motion to dismiss 'if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge.'" *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted). "[A]n indictment missing an essential element that is properly challenged before trial *must* be dismissed." *United States v. Qazi*, 975 F.3d 989, 991 (9th Cir. 2020) (emphasis in original).

"In the Ninth Circuit[,] the use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished." *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (quotation marks omitted). "An indictment that tracks the words of the statute violated is generally sufficient, but implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995).

Defendant challenges the sufficiency of the indictment on the grounds that:

(1)   The indictment does not set forth each element of the crime it charges;

(2)   the contents of the indictment violate federal rules of criminal procedure 7(c)(1) and are not a "plain, concise, and definite written statement of facts constituting the offense charged"; … [and]

(4)   the indictment fails to sufficiently charge an offense proscribable by the legal definitions of the "conduct" alleged that the statute criminalizes ("intimidation" and "harassment")[.]

Dkt. 59 at 2 (errors in original). Defendant further argues, "[t]he only element this indictment sets forth is that Defendant Lipman 'used a facility of interstate commerce' to communicate." *Id.* at 17. According to defendant, "[t]he other elements of the crime in 18 U.S.C. [§] 2261A(2)(A), the intent element, the fear element, and the 'conduct' element are not 'plainly', 'concisely', and 'definitely' written in compliance with 'Rule of Criminal Procedure 7(c)(1)….'" *Id.* The court disagrees.

The indictment charges defendant with violating § 2261A(2)(A) and (B), which state in relevant part:

> Whoever— … (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> (A) places that person in reasonable fear of the death of or serious bodily injury to a person, … described in clause (i), (ii), [or] (iii) … of paragraph (1)(A); or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in [18 U.S.C.] section 2261(b) or section 2261B, as the case may be.

18 U.S.C. § 2261A(2) (brackets in original). [10]

---

[10] Defendant argues § 2261A(2) should be read to limit subdivision (A) to proscribing only conduct performed with the intent to kill or injure, and subdivision (B) to proscribing only conduct performed with the intent to harass or intimidate. Dkt. 59 at 17. The court disagrees. Section 2261A(2) includes the language "with the intent to kill, injure, harass, intimidate …" in the main text of the subdivision. A plain reading of this statute indicates Congress intended to prohibit conduct performed with all four forms of intent under both subdivisions of the statute. If Congress had intended to

11

The persons described in § 2261A(1)(A) are:

> (i) that person;

> (ii) an immediate family member (as defined in … 18 USCS § 115) of
> that person; [or]

> (iii) a spouse or intimate partner of that person[.]

18 U.S.C. § 2261A(1)(A)(i)–(iii) (internal brackets omitted).

After reviewing the indictment, the court finds it contains the elements of the offense charged in sufficient detail to: (1) enable defendant to prepare his defense; (2) ensure defendant that he is being prosecuted on the basis of the facts presented to the grand jury; (3) enable him to plead double jeopardy, if applicable; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge. *See Rosi*, 27 F.3d at 414.

The indictment states in relevant part:

> 1. Beginning on an unknown date but no later than February 1, 2023, and continuing to at least on or about September 22, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant JONATHAN LIPMAN, with the intent to harass and intimidate K.R., used an interactive computer service, an electronic communication service, an electronic communication

---

limit the scope of each subdivision in the manner defendant argues is reasonable, Congress could have specifically worded the statute in that manner. Congress did not.

Furthermore, defendant does not offer any explanation of why it would have been unreasonable for Congress to prohibit individuals from engaging in a course of conduct that "places that person in reasonable fear of the death of or serious bodily injury" of an enumerated person, with the intent to harass or intimidate, or "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to an enumerated person, with the intent to kill, injure, harass, or intimidate. *See* 18 U.S.C. § 2261A(2). Congress could reasonably have intended to prohibit individuals from engaging in cyberstalking and cyberbullying with the intent to harass or intimidate victims by placing them in reasonable fear of death or serious bodily injury of themselves or loved ones, or to injure victims emotionally with the intent to cause such distress or drive them to suicide or self-harm. Defendant's argument, thus, fails.

1
2
3
4
5

system of interstate commerce, and other facilities of interstate and
foreign commerce, namely, cellular telephone networks, email,
interstate wires, and the Internet, to engage in a course of conduct,
described in paragraph 2 below, that placed K.R. in reasonable fear of
death and serious bodily injury to K.R., and that caused, attempted to
cause, and would reasonably be expected to cause substantial
emotional distress to K.R.

6    Dkt. 12 at 1–2.

7         Paragraph 2 of the indictment identifies the specific conduct of which defendant

8    is charged, namely, sending K.R. communications including: (1) an e-mail that

9    "contained a photograph of what appeared to be a lever action shotgun and the

10   following text: ';)'"; (2) an e-mail titled: "I'll make sure you get a copy of a script you

11   are in, in which defendant LIPMAN wrote 'it's got a photo of your head on a

12   mantle'"; (3) an e-mail titled: "Your death," in which defendant wrote, "I pray every

13   single day that you suffer a slow and painful death" and "I pray you have some issue

14   with your lungs and your family watches you die slowly struggling to breath like

15   many Jews in the holocaust"; (4) an e-mail in which defendant stated, "as you struggle

16   to breath or what ever consequence of your selfish little life befalls your body and

17   betrays your existence, you will remember me" and "Your concerns about where you

18   are headed are warranted.  Some call it hell."; (5) an e-mail titled: "the world would be

19   better off if [K.R.] died tomorrow," in which defendant wrote, "massive car accident.

20   gunshot wound.  beheading.  stroke" and "'justice' is her suffering in a body she can't

21   escape. emphysema sounds like justice"; (6) an e-mail titled "Let us fantasize about a

22   terrible human being masquerading as a judge dying," in which defendant wrote an

23   elaborate fantasy about K.R. being humiliated, tortured, and killed by the founding

24   fathers with her body dismembered and "[h]er limbs and body parts sold as

25   souvenirs"; and (7) an e-mail titled "A violent terroristic threat," in which defendant

26   wrote, "make sure to remove [defendant's] right to own weapons.  Don't just limit it

27   to guns."  Dkt. 12 at 2–6 (errors in original).

28   / / /

The facts alleged in the indictment are sufficient to charge defendant with "us[ing] the mail, any interactive computer service or electronic communication or electronic communication system of interstate commerce" to engage in a course of conduct, "with the intent to … injure, harass, [or] intimidate" K.R., that: (A) placed K.R. "in reasonable fear of the death of or serious bodily injury to" herself, her spouse, or an immediate family member; or (B) "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress to" K.R., her spouse, or an immediate family member. *See* 18 U.S.C. § 2261A(1)(A)(i)–(iii), (2).

Accordingly, the court DENIES defendant's challenges to the sufficiency of the indictment on these bases.

## C.    Facial Challenge Under the First Amendment

Defendant contends § 2261A(2) is facially unconstitutionally overbroad and vague in violation of the First Amendment. Dkt. 59 at 2, 32. Defendant's argument fails as a matter of law, because the Ninth Circuit has already held that the statute is facially constitutional on both grounds.

In *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014), the Ninth Circuit held that "because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment." As the Ninth Circuit explained, "an overbreadth challenge … will rarely succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.* at 943 (brackets omitted). "18 U.S.C. § 2261A specifically criminalizes 'a course of *conduct* that … causes … substantial emotional distress to [the harassee].'" *Id.* at 944 (italics and brackets in original). "Additionally, 18 U.S.C. § 2266(2) provides that '[t]he term "course of conduct" means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose.'" *Id.* "Thus, the proscribed acts are tethered to the underlying criminal conduct and not to speech." *Id.* The statute is not

unconstitutionally overbroad as a matter of law.[11]

The Ninth Circuit similarly held that § 2261A is not unconstitutionally vague. "In a facial challenge, a statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* at 943–44. As the Ninth Circuit explained, § 2261A uses language that is "not esoteric or complicated" and terms like "harass" and "substantial emotional distress" that are "understood by persons of common intelligence" to provide clear notice of the conduct proscribed. *Id.* at 945. The statute is not unconstitutionally vague as a matter of law.

The court, therefore, DENIES the Motion on these bases.[12]

## D.   As-Applied Challenge Under the First Amendment

Defendant contends "(5) the indictment as-applied violates the defendants first amendment rights;" and "(7) the indictments application in this particular case is unconstitutionally overbroad[.]" Dkt. 59 at 2 (errors in original), 23–28. According to defendant, his speech "serve[d] to protest and spotlight the same expressions that Christianity has used to coerce Jews into conversion," and "[was] a demonstration against an Ocean County government or other governments that have a history of

---

[11] The Ninth Circuit additionally agreed with the Eighth Circuit that "because the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions." *Osinger*, 753 F.3d at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012), brackets omitted).

[12] Defendant argues the Third Circuit "came precariously close to invalidating 18 U.S.C. [§] 2261A(2)(A)" in *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022). Dkt. 59 at 17, 32. As defendant acknowledges, however, *Yung*, 37 F.4th at 78, upheld the statute against a facial challenge, after recognizing "[t]he intent element, narrowly construed, saves the statute" because "[h]arassment and intimidation, narrowly construed, are punishable." *See* Dkt. 59 at 32. *Yung* does not support defendant's contention that the statute is facially unconstitutional.

15

1  allowing this expression to be employed on Jewish or minority children and adults to

2  get them to convert or move somewhere else." *Id.* at 23.

3       Defendant cites cases including *Osinger*, *Petrovic*, and *United States v. Sayer*,

4  748 F.3d 425 (1st Cir. 2014), to argue § 2261A(2) is unconstitutional to the extent it

5  proscribes conduct that consists entirely of speech without any additional extortionate

6  or coercive actions.  Dkt. 59 at 23, 25.  The appellate courts in the cited cases rejected

7  those defendants' as-applied First Amendment challenges and affirmed their

8  convictions under § 2261A(2).  *See Osinger*, 753 F.3d at 947 (rejecting as-applied

9  challenge to § 2261A(2), where defendant "was unrelenting in his pursuit and

10 harassment of [the victim], including sending threatening text messages"); *Sayer*, 748

11 F.3d at 433–44 (same, finding no lawful purpose to the defendant's conduct of

12 creating false online advertisements and accounts in the victim's name and

13 impersonating her on the internet); *Petrovic*, 701 F.3d at 854–55 (same, finding

14 defendant's harassing and distressing communications were not protected by the First

15 Amendment because they were integral to criminal conduct of extortion).  These cases

16 do not support defendant's argument that it is unconstitutional for the government to

17 proscribe the criminal conduct charged here.[13]

18      The Ninth Circuit has held that "[i]n those instances, where speech becomes an

19 integral part of the crime, a First Amendment defense is foreclosed even if the

20 prosecution rests on words alone."  *United States v. Meredith*, 685 F.3d 814, 820 (9th

21 Cir. 2012).  As the Supreme Court has explained, "it has never been deemed an

22 abridgment of freedom of speech … to make a course of conduct illegal merely

23 because the conduct was in part initiated, evidenced, or carried out by means of

24 language, either spoken, written, or printed."  *Giboney v. Empire Storage & Ice Co.*,

25 _____

26 [13] To the extent defendant contends harassing or intimidating speech falls outside of
   First Amendment protection only if it was intended to extort or compel a victim to
27 engage in specific conduct (*see* Dkt. 59 at 23–25), defendant's argument is not
   supported by the cases cited in his Motion.
28

336 U.S. 490, 502 (1949).  Based on the facts alleged in the indictment, the court finds the expressive aspects of defendant's communications are not entitled to protection under the First Amendment, because they were integral to the criminal conduct charged, *i.e.*, intentionally harassing or intimidating K.R and placing her in reasonable fear or causing her substantial emotional distress in the manner prohibited by § 2261A(2).  *See*, *e.g.*, *Osinger*, 753 F.3d at 947.

Defendant admits he sent the communications in question, but argues he included additional language that was not included in the indictment, which provided context to the language quoted and rendered his communications protected speech. Dkt. 59 at 20–21.  As Judge Watford noted in his concurrence in *Osinger*, 753 F.3d at 953–54 (citing *Gormley v. Dir., Conn. State Dep't of Prob.*, 632 F.2d 938, 941–42 (2d Cir. 1980)), a course of conduct involving speech can fall outside of First Amendment protection based on "non-communicative aspects of the speech, like repeated unwanted communications that are harassing due to their sheer number and frequency."  That is exactly what was charged here.[14]  *See* Dkt. 12 at 2–6.

Defendant's arguments regarding his intent to engage in protest are unavailing, as the *course of conduct* charged involved sending repeated, threatening, and disturbing communications to an unwilling listener, for no apparent purpose other than harassment or intimidation as prohibited by § 2261A(2).  *See Osinger*, 753 F.3d at 953 (J. Watford, concurring) ("No one disputes that, as a general matter, Congress has the power to punish those who engage in interstate stalking.  … True, [defendant]

---

[14] As the West Virginia Supreme Court explained in connection with a West Virginia state statute that prohibited intentionally harassing or abusing another by means of a telephone: "Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech.  Harassment is not communication, although it may take the form of speech.  The statute prohibits only telephone calls made with the intent to harass.  Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone."  *State v. Thorne*, 175 W. Va. 452, 454 (1985).

engaged in some speech that, considered in isolation, might have been entitled to First Amendment protection.  But as the court correctly holds, that speech lost whatever protection it might have enjoyed because its 'sole immediate object' was to facilitate his commission of the stalking offense.").  A reasonable jury could find this course of conduct constituted intentional harassment or intimidation prohibited by § 2261A(2).  Defendant's arguments, thus, fail.

Defendant additionally argues his conduct was "similar to the first amendment protected speech as determined by the Supreme [C]ourt, in [*Elonis v. United States*, 575 U.S. 723 (2015)]."  Dkt. 59 at 22.  There, the defendant was convicted by a jury for violating 18 U.S.C. § 875(c), which prohibits individuals from transmitting in interstate commerce "any communication containing … any threat to injure the person of another…."  *Elonis*, 575 U.S. at 726.  At trial, the defendant requested a jury instruction that the government was required to prove he intended to communicate a "true threat," which the district court denied.  *Id*. at 731.  The Third Circuit affirmed the conviction on appeal, holding "the intent required by Section 875(c) is only the intent to communicate words that the defendant understands, and that a reasonable person would view as a threat."  *Id.* at 732.

The Supreme Court granted certiorari and reversed the judgment of the Third Circuit, holding the "reasonable person" standard of intent the appellate court applied was insufficient to support a criminal conviction.  *Id.* at 737–38.  The Supreme Court declined expressly "to consider any First Amendment issues."  *Id.* at 740.  On remand, the Third Circuit again affirmed and upheld the defendant's conviction, finding the jury instruction error was harmless because the predicate facts established the defendant's *mens rea* conclusively.  *United States v. Elonis*, 841 F.3d 589, 598 (3rd Cir. 2016) (internal brackets and quotation marks omitted); *see id.* ("The record contains overwhelming evidence demonstrating beyond a reasonable doubt that Elonis knew the threatening nature of his communications, and therefore would have been convicted absent the error.").  The Supreme Court denied the defendant's subsequent

18

petition for writ of *certiorari* of this decision, 583 U.S. 816 (2017), and the defendant was ultimately sentenced to 44 months in prison, along with 3 years' supervised release, Case No. 5:11-cr-00013-LS-1, Dkt. 82 (E.D. Pa. Sept. 28, 2012). *Elonis* does not support defendant's contention that § 2261A is unconstitutional as applied to the conduct charged here.[15]

In sum, the court finds that the conduct charged in the indictment falls outside the scope of First Amendment protection. The court, therefore, DENIES the Motion on these bases.

## E.    Intent and Harm

Defendant contends "the factual allegations presented in indictment and discovery are insufficient for a rational factfinder to conclude beyond a reasonable doubt that any 'person' suffered substantial emotional distress or fear of bodily harm[.]" Dkt. 59 at 2. Defendant further argues that a rational jury could not find he intended the communications in question to be received by an individual person, because he sent his e-mails to K.R. through her governmental e-mail address, in her capacity as an extension of "the court," rather than as an individual person. *Id.* at 29–31. Defendant further argues that his intent to engage in the protest of the New Jersey government in general, rather than to direct conduct to any individual person, is

_____

[15] On reply, defendant argues the facts of this case are similar to those of *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), in which a district court held an indictment under § 2261A(2)(A) was unconstitutional as applied. Dkt. 75 at 5. *Cassidy* is a district court opinion from outside the Ninth Circuit and does not constitute binding legal authority. Furthermore, the *Cassidy* court's ruling centered on the fact that the communications at issue were made in a public forum and not directed specifically to the alleged victim. *See* 814 F. Supp. 2d at 585–86. The district court specifically distinguished the facts of that case from cases involving "harassing telephone calls … targeted toward a particular victim and … received outside a public forum," which were not protected speech. *Id.* at 858. Here, defendant is charged with sending harassing and threatening communications directly to K.R. by e-mail and telephone. Dkt. 12 at 2–6. *Cassidy* does not support defendant's argument that § 2261A(2) is unconstitutional as applied here.

19

established by the fact that he also sent similar communications to multiple other judges and government officials. *Id.* at 12, 29.  The court disagrees.

The indictment charges defendant with sending K.R. communications including: (1) telephone calls and e-mails that identified, discussed, and were directed to K.R. by name; and (2) contacting one of K.R.'s neighbors, with whom he had no prior known connection, by telephone and leaving a voicemail message. Dkt. 12 at 2–6.  The identified portions of defendant's communications did not discuss or criticize the New Jersey government (or any branch or department thereof), or any specific action or inaction by the government. *See id.*  Based on the conduct charged, no rational jury could find defendant's course of conduct was not directed toward K.R. personally.

Defendant's argument that K.R. did not qualify as a "person" under § 2261A(2) because of her role as a government official is entirely frivolous and lacks merit.[16] Similarly, the fact that defendant sent communications to other individuals and government officials would not preclude a rational jury from finding: (1) defendant intended maliciously to intimidate and/or harass K.R. by engaging in the course of conduct charged, and that (2) K.R. was placed in reasonable fear of death or serious bodily harm, or (3) K.R. would have reasonably been expected to suffer substantial emotional distress, based on defendant's conduct.  If anything, defendant's statements appear to constitute an admission that he engaged in unlawful courses of conduct

---

[16] Defendant cites *Beauharnis v. Illinois*, 343 U.S. 250, 263 n. 18 (1952), to argue that "[p]ublic men [and women] are, as it were, public property," and cannot be considered "persons" for purposes of § 2261A(2). Dkt. 59 at 29.  *Beauharnis* does not hold or suggest that individuals who hold public office do not qualify as "persons" under federal law and are not protected by the federal criminal statutes.  Furthermore, the language quoted was not part of or relied upon by the Supreme Court in is holding and is *dicta*.  There is no legal authority that holds or even suggests conduct criminalized under § 2261A becomes protected speech under the First Amendment if directed against a person who holds office or is employed as a public official, as defendant contends.  *See* Dkt. 75 at 4–6.  Defendant's argument is frivolous.

against other individuals separate from and in addition to K.R.  The court will not
grant the Motion on this basis.

At the hearing, defendant argued the indictment was defective because the
Supreme Court held in *Counterman v. Colorado*, 600 U.S. 66 (2023), that the First
Amendment required proof that a defendant had some subjective understanding of the
threatening nature of his statements for true threats of violence to be found to be
outside the bounds of First Amendment protection.  *See* Dkt. 83 at 1.  According to
defendant, "[t]he Indictment and allegations by the government … do not even reach
the level of recklessness…."  Dkt. 83 at 8.

In *Counterman*, 600 U.S. at 72, the Supreme Court recognized "[t]rue threats of
violence … lie outside the bounds of the First Amendment's protection," and that "a
statement can count as such a threat based solely on its objective content."  The issue
before the Court was "whether the First Amendment nonetheless demands that the
State in a true-threats case prove that the defendant was aware in some way of the
threatening nature of his communications."  *Id.* at 73.  The Supreme Court ultimately
held that "the State must prove in true-threats cases that the defendant had some
understanding of his statements' threatening character," and that "a recklessness
standard [of *mens rea*] is enough."  *Id.*  "In the threats context, it means that a speaker
is aware 'that others could regard his statements as' threatening violence and 'delivers
them anyway.'"  *Id.* at 79.

The indictment charges defendant with engaging in a course of conduct with the
intent to harass or intimidate K.R.—not issuing a true threat—and *Counterman* is not
directly applicable here.  Dkt. 12.  Nevertheless, to the extent the same principles
regarding *mens rea* apply, § 2261A(2) meets the *mens rea* standard the Supreme Court
established in that case.  As charged in the indictment, the government must prove
defendant acted "with the intent to … harass [or] intimidate" K.R. for defendant to be
convicted for violation of § 2261A(2).  *See* Dkt. 12 at 1.  Section 2261A(2), thus,
requires proof of at least the same, if not a higher degree of *mens rea*, than the

21

recklessness standard. *See Counterman*, 600 U.S. at 75–76 (recognizing a higher standard of *mens rea* is required for specific intent crimes such as fraud, defamation, and incitement to unlawful conduct than recklessness).[17]

As stated, a reasonable jury could find, based on the contents and sheer number of communications identified in the indictment, that defendant intended to harass or intimidate K.R., and that she was placed in reasonable fear or suffered substantial harm in the manner prohibited by § 2261A(2) due to defendant's conduct. The court, therefore, DENIES the Motion on these bases.[18]

## F.    Eighth Amendment

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Defendant contends § 2261A(2)(A) violates the Eighth Amendment "by

---

[17] As the Supreme Court explained: "The law of *mens rea* offers three basic choices. Purpose is the most culpable level in the standard mental-state hierarchy, and the hardest to prove. A person acts purposefully when he "consciously desires" a result—so here, when he wants his words to be received as threats. Next down, though not often distinguished from purpose, is knowledge. A person acts knowingly when 'he is aware that a result is practically certain to follow'—so here, when he knows to a practical certainty that others will take his words as threats. A greater gap separates those two from recklessness. A person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk that the conduct will cause harm to another.'" *Counterman*, 600 U.S. at 78–79 (internal brackets and citations omitted).

[18] In his Notice of Request for a Ruling, defendant argues he has been diagnosed with Autism Spectrum Disorder, which affects his ability to comprehend how his words could produce an emotional reaction in those exposed to them. Dkt. 121 at 3. According to defendant, "[t]his latter condition means that Mr. Lipman lacked the mens rea to commit a crime." *Id.* Defendant does not cite any legal authority to support his argument. *See id.* The court holds defendant's subjective intent is a question appropriate for a jury to determine at trial. *See United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021) (upholding a jury's findings, based on the evidence presented, that a defendant with Autism Spectrum Disorder had the requisite intent to be convicted of violating § 2261A(2)(B)).

virtue of its overlybroad inclusion of the language 'kill', 'injure', 'harass', intimidate, or 'surveil with intent to kill, injure, harass, or intimidate' occupying the same statute." Dkt. 59 at 34 (errors in original).  According to defendant, "[c]ombining 5 different types of conduct in the same statute is highly problematic and demonstrative of a Congress either too incompetent or too lazy to pass more than one law at a time." *Id.*

Defendant does not present any cognizable argument or cite any legal authority to establish how Congress's decision to criminalize multiple different forms of conduct within one statute violates the Eighth Amendment.  Defendant's argument that it is "unusual" for Congress to criminalize multiple conduct in one statute (Dkt. 59 at 34) is frivolous.[19]  The court, therefore, DENIES the Motion on this basis.

## G.    Fourth Amendment

Defendant contends "[t]he search warrant and/or gathering of evidence violated defendants 4th amendment rights." Dkt. 59 at 2 (errors in original).  Defendant admits he has not reviewed the search warrant and lacks specific knowledge of a violation or evidence to support his argument. *Id.* at 36 ("Defendant is admittedly raising these grounds without a copy of the search warrant on the basis the public defenders office claimed there was an argument to dismiss charge due to issues with governments warrant of search.") (errors in original).

The court, therefore, DENIES the Motion on this basis as entirely speculative.

## H.    Federal Rule of Evidence 403

Finally, Defendant contends "the federal governments failure to investigate 'the whole record' (Bose Corp v Consumers Union of the United States Inc, 1949), instead

---

[19] To the extent defendant believes mistakenly that § 2261A requires the same penalty be imposed for each of the different conduct prohibited by the statute, the court notes that penalties for violations of § 2261A are stated in 18 U.S.C. § 2261(b)—which sets forth different penalties depending on factors including the degree of harm suffered by the victim.  All violations of § 2261A are not punished equally, as defendant appears to believe.

relying on the investigation by the state of New Jersey, forces the court to have to exercise rule 403 and exclude all 'evidence' of the case due to the partiality of that evidence violating 'the peoples' and the defendants right to the full truth of 'the whole record' and 'justice'"[.]  Dkt. 59 at 2 (errors in original); *id.* at 20.

Pursuant to Federal Rule of Evidence 403 ("Rule 403"), "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In *Bose Corp. v. Consumers Union*, 466 U.S. 485, 499 (1984) (underline added), the Supreme Court acknowledged that "in cases raising First Amendment issues[,] we have repeatedly held that an underline appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" As *Bose* and the cases cited therein make clear, appellate courts must review the whole trial court record in deciding appeals involving First Amendment issues.  *See id.*  *Bose* did not impose any affirmative duty on prosecutors to investigate and present evidence of matters that a defendant in a criminal action believes should be included within "the whole record," as defendant contends.  Defendant's argument, thus, fails.

To the extent defendant contends any specific evidence in the record should be excluded under Rule 403, defendant fails to identify such evidence or present any cognizable argument as to why the probative value of such evidence would be "substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *See* Fed. R. Evid. 403.  Defendant, thus, fails to establish that any specific evidence should excluded under Rule 403.

The court, therefore, DENIES the Motion on this basis.

/ / /

# CONCLUSION

For the aforementioned reasons, the court DENIES defendant's Motion in its entirety.  The court declines to address defendant's remaining arguments as irrelevant, frivolous, inapposite, and/or moot.

IT IS SO ORDERED.

Dated: September 4, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge