BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Assistant United States Attorney
General Crimes Section
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
Transnational Organized Crime Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4962/0813
     Facsimile: (213) 894-0141
     E-mail:    clifford.mpare@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-00491-FLA |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: May 13, 2025 |
| JONATHAN LIPMAN, | Trial Time: 8:30 a.m. |
| Defendant. | Location: Courtroom of the Hon. Fernando L. Aenlle-Rocha |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Clifford D. Mpare and Daniel H. Weiner, hereby submits its trial memorandum in the above-captioned case.

//

//

The government reserves the right to submit supplemental trial memoranda as appropriate before, or during, the trial.

Dated: April 24, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Divisions


_____/s/_____
CLIFFORD D. MPARE
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TRIAL MEMORANDUM[1]**

**I.  STATUS OF THE CASE**

  **A.   Trial Schedule**

The jury trial against defendant Jonathan Lipman ("defendant") is set begin on May 13, 2025, at 8:30 a.m.  Defendant is detained pending trial.

  **B.   Length of Trial**

The government estimates its case-in-chief will take approximately two court days.  As of the date of this filing, defendant has not identified any witnesses he intends to call during his case, if any.

  **C.   Witnesses**

At this time, the government expects to call in its case-in-chief the six fact witnesses listed below.  The government will update its witness list, as necessary, in advance of trial.  Based on the testimony of any witnesses called by the defendant, the government may call additional witnesses in any rebuttal case.

  1. E.C. (Probation Officer, Ocean County Probation Office);
  2. Sergeant Daniel Lokerson (Officer, Deal County Police Department);
  3. Detective Duc Cao (Detective, Los Angeles Police Department);
  4. Hon. K.R. (Judge, New Jersey Superior Court);
  5. Jacob Tomes (Special Agent, Federal Bureau of Investigation); and
  6. A witness from Google to identify that defendant used a facility of interstate commerce during his course

---

[1] On April 24, 2025, defense counsel informed the government that the defense had no objections to the government's Trial Memorandum.

of conduct directed towards K.R. (absent a stipulation to that effect).

## II. STATEMENT OF THE CHARGE AGAINST DEFENDANT

Defendant is charged in the Indictment with Stalking in violation of 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(5).[2]  As noted in its memorandum filed on March 22, 2024, the government has elected to proceed solely on the theory that defendant violated 18 U.S.C. § 2261A(2)(B).[3]  (Dkt. 88.)

As charged in the Indictment, a violation of 18 U.S.C. § 2261A(2)(B) has the following elements:

First, defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct;

Second, defendant, while engaged in the course of conduct, acted with the intent to harass or intimidate Victim K.R.; and

Third, defendant's course of conduct (i) caused; (ii) attempted to cause; or (iii) would be reasonably expected to cause substantial emotional distress to Victim K.R.

The government has provided definitions of "harass", "intimidate", "substantial emotional distress," ""would be reasonably expected to cause," and "course of conduct" in its proposed jury instructions for the stalking offense.

---

[2] Section 2261(b)(5) is the penalty provision for a violation of 18 U.S.C. § 2261A.

[3] The government's decision to proceed on a narrower charge than what is contained in the indictment is consistent with Ninth Circuit law.  See, e.g., United States v. Wilbur, 674 F.3d 1160, 1178 (9th Cir. 2012).

## III. STATEMENT OF FACTS

The government expects that the evidence at trial will establish the following facts:

Defendant sent a series of violent, disturbing, and threatening emails to Victim K.R., a New Jersey Superior Court Judge, to harass and intimidate the judge. Defendant did so because he was upset with a protective order issued by K.R. against him. In addition to sending volumes of threatening emails to the judge from February to September 2023, defendant also: (i) tracked down K.R.'s address and called her neighbor to harass, intimidate, and stoke fear in K.R.; (ii) left numerous voicemails at the New Jersey courthouse directed at K.R.; and (iii) continued his course of conduct despite warnings from law enforcement regarding his illegal conduct. Over time, defendant's communications became increasingly graphic and explicit.

Defendant's course of conduct included, among other things, the following communications directed toward K.R., which the government intends to admit at trial:

    a. On or about February 1, 2023, defendant sent an email to K.R. which contained a photograph of what appeared to be a lever action shotgun and the following text: ";)".

    b. On or about February 1, 2023, defendant called E.C.[4] and told E.C. he had a message for E.C. and K.R., namely that "it's a shame there are kids that get shot up in schools instead of you people."

---

[4] E.C. is a probation officer in the Ocean County Superior Court. E.C. was responsible for coordinating the court calendar for K.R. and received several messages and voicemails from defendant.

3

    c. On or about February 4, 2023, defendant sent at least six emails to K.R., including the following:

     i. an email stating, among other things, "you make the world a worse place. People will know your name."

     ii. an email stating, among other things, "Just because I say [K.R.] would make a better corpse than a person doesn't mean I'm going to make her a corpse."

     iii. an email titled "I'll make sure you get a copy of a script you are in," in which defendant wrote, "it's got a photo of your head on a mantle."

    d. On or about February 23, 2023, defendant called and left a voicemail regarding K.R. for E.O., who is K.R.'s neighbor, and to whom defendant had no prior known connection.

    e. On or about March 14, 2023, defendant sent at least two emails to K.R., including the following:

     i. an email stating, among other things, that "Cancer and coronavirus and emphysema exist to balance out bigots like you abusing your privilege."

     ii. an email stating, among other things, "Who the world will be much better off as a corpse than a person."

    f. On or about March 28, 2023, defendant sent at least three emails to K.R., including the following:

     i. an email titled "Your death," in which defendant wrote, "I pray every single day that you suffer a slow and painful death" and "I pray you have some issue with your lungs and your family watches you die slowly struggling to breath like many Jews in the holocaust."

4

        ii.    an email titled "Seriously after the life [K.R.] has lead," in which defendant wrote, "She's deserves to spend a decade in geriatric struggle and misery as her family helplessly watches."

        iii.    an email stating, among other things, "as you struggle to breath or what ever consequence of your selfish little life befalls your body and betrays your existence, you will remember me" and "Your concerns about where you are headed are warranted. Some call it hell."

    g.    On or about July 23, 2023, defendant sent at least 11 emails to K.R., including the following:

        i.    an email titled "Let us pray that [K.R.] dies as soon as possible," in which defendant wrote, "Let us pray that [K.R.] dies suffocating in her own body" and "Please god kill her violently. but with cancer or a lower gi bleed. something long and dragged out that robs her of her ability to speak for years."

        ii.    an email titled "let us pray that [K.R.'s] family watches her die slowly in hospice," in which defendant wrote, "let her last moments wander to wondering if her family even wants to be there as she suffocates to death for her lifetime of sins."

        iii.    an email titled "the world would be better off if [K.R.] died tomorrow," in which defendant wrote, "massive car accident. gunshot wound. beheading. stroke" and "'justice' is her suffering in a body she can't escape. emphysema sounds like justice."

        iv.    an email titled "plenty of people realize as humans they make the world a worse place," in which defendant wrote,

5

"once again let us pray that [K.R.] dies the most painful natural death possible.  or decapitation."

   v. an email titled "Let us fantasize about a terrible human being masquerading as a judge dying," in which defendant wrote, an elaborate fantasy about K.R. being tortured and killed by the founding fathers.  The email further states, "Let us imagine" several American historical figures "breaking into [K.R.'s] house in the middle of the night and removing her at gun point."  Defendant also wrote, "Lets imagine [K.R.] being dragged to the gallows.  [K.R.] is begging and pleading like a nazi, saying she was just following orders.  people throw feces on her.  they throw urine on her.  [K.R.] is stipped naked and forced to walk . . . By the time [K.R.] gets to the gallows she is silent.  They hang her" and "[K.R.] doesnt die right away.  She suffocates.  It takes minutes.  [K.R.'s] face turns purple.  Her eyes get red.  Her blood vessels pop.  All the fluid in her face comes out of her eyes and mouth.  she can no longer even be the only person who would cry about her death . . . Then [K.R.] is beheaded.  Her head is placed on a stick.  Her limbs and body parts sold as souvenirs.  200 years later her ribcage still hangs in a tavern."

   vi. an email titled "knives over guns," in which defendant wrote, "guns are too quick," and "now I could be talking about in a movie tv show.  I could be talking about in a book.  I could be talking about a radio play."

   vii. an email in which defendant wrote, "the ted bundy's.  The people who target an individual.  They get the attention. . .  They generally dont use don't use guns either.  it's the gun that usually gets them caught.  They just like strangle

6

people or use knives.  and then one day they screw up their routine and use the gun they had just in case and their story ends.  But its the people who use their hands that make the most noise long term."

        viii.   an email in which defendant wrote, "no one said [K.R.] will have a knife held to her throat," and "she deserves to imagine a knife being held to her through though."

        ix.   an email titled "Its lung cancer though right!?" in which defendant wrote, "the real fantasy is [K.R.'s] body betraying her and her being forced to sit in a room, struggling to survive herself.  Struggling to get her lungs or heart to work.  dealing with one of the great human ironies of all.  Not wanting to die, but wanting to die.  Fighting death for way so long that eventually you realize its the best thing that could happen."

        x.   an email titled "A violent terroristic threat," in which defendant wrote, "make sure to remove [defendant's] right to own weapons.  Don't just limit it to guns."

    h.   On September 22, 2023, defendant sent an email to [K.R.] and others in which he wrote, "The world would be better off if you all died" and "I want you to spend years contemplating suicide over your failing health.  Having to choose between another year of labored breathing or potentially going to hell for suicide."

**IV. LEGAL AND EVIDENTIARY ISSUES**

   **A.   Hearsay**

At trial, government witnesses will testify as to statements made to (or directed towards) them by defendant.  The government will seek to admit various forms of defendant's statements, including emails and voicemails.  When offered by the government, statements by a defendant are admissions by a party-opponent.  Fed.

7

R. Evid. 801(d)(2); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). Moreover, courts routinely admit electronic evidence, like emails, as party admissions in criminal cases. See, e.g., United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) ("The statements [in emails] attributed directly to [defendant] come in as admissions by a party opponent under Fed. R. Evid. 801(d)(2)(A)"); United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000) ("Those [emails] sent by [defendant] constitute admissions of a party"). Thus, defendant's statements in emails and voicemails are admissible against defendant.

While the government may present evidence regarding defendant's statements, such statements, if offered by defendant either through cross-examination of government witnesses or through his own witnesses, are inadmissible hearsay. Ortega, 203 F.3d at 682 (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay); see also United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (holding the district court properly sustained government's hearsay objection to defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent).[5] A defendant may not avoid testifying by introducing his own self-serving hearsay statements. See United States v. Mitchell, 502 F.3d 931, 964-65 (9th Cir. 2007) (upholding district judge's ruling precluding on hearsay grounds defense counsel from attempting to elicit defendant's exculpatory statements); Ortega, 203 F.3d at 682 (same).

---

[5] Defendant objects to the government's position on the hearsay rule pursuant to FRE 401 and 402.

8

**B.     Provisional Admission of Evidence Pending Foundation**

The government may request that the Court provisionally admit certain exhibits pending the foundation being established by a later witness. With its burden of proof, this is necessary for the government to present its case in a logical and coherent manner as it is entitled to do under Old Chief v. United States, 519 U.S. 172, 186-89 (1997).

**C.     Summary Charts**

The government intends to introduce two charts summarizing voluminous records of defendant's communications to K.R. pursuant to Rule 1006.

      1.     Exhibit 2 (Chart of Messages from Defendant)

Exhibit 2 is a chart summarizing messages sent by defendant from various email accounts from February to September 2023. It includes the email account used, the number of emails sent, and the recipients of the emails. The underlying records were produced in discovery and a draft chart has been produced to defense counsel.

      2.     Exhibit 3 (Chart Highlighting Messages from Defendant)

Exhibit 3 is a chart highlighting messages sent by defendant from various email accounts from February to September 2023. It excerpts potions of the messages and provides the date/time and recipients of the messages. The underlying records were produced in discovery and a draft chart has been produced to defense counsel.

**D.     Lay (Non-Expert) Witness Testimony**

The government will not seek to admit any expert testimony. FBI Special Agent Jacob Tomes, who reviewed electronic data received from Google via a federal search warrant, is expected to testify

9

about the contents seized during his search.  The government is not proffering Agent Tomes' testimony as expert testimony and submits that such testimony is not expert testimony.

**E.   Pending Motions**

As of the date of this filing, there are three pending motions in limine filed by the government:

1. Government's First Motion in limine to Admit Evidence of Defendant's Relationship and Contact with Other Public officials (Dkts. 57, 91);

2. Government's Second Motion in limine to Exclude Evidence Relating to Any Alleged Abuse Suffered by Defendant During His Childhood and Jury Nullification Arguments (Dkt. 58); and

3. Government's Third Motion in limine to Preclude Evidence, Argument, and Questioning Related to Defendant's Punishment, Conditions of Incarceration, and other Irrelevant and Prejudicial Topics

Dated: April 24, 2025              Respectfully submitted,

                                   BILAL A. ESSAYLI
                                   United States Attorney

                                   LINDSEY GREER DOTSON
                                   Assistant United States Attorneys
                                   Chief, Criminal Divisions


                                        /s/
                                   CLIFFORD D. MPARE
                                   DANIEL H. WEINER
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA